IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**ROBERT TRAVIS JENKINS,**

    **Plaintiff,**

    v.                                              CASE NO. 25-3119-JWL

**ARAMARK FOOD SERVICES,**
**et al.,**

    **Defendants.**

## MEMORANDUM AND ORDER TO SHOW CAUSE

Plaintiff Robert Travis Jenkins is hereby required to show good cause, in writing to the undersigned, why this action should not be dismissed due to the deficiencies in Plaintiff's Complaint that are discussed herein.

**1. Nature of the Matter before the Court**

Plaintiff brings this pro se civil rights action under 42 U.S.C. § 1983. Plaintiff is incarcerated at the Hutchinson Correctional Facility in Hutchinson, Kansas ("HCF"). The Court grants Plaintiff's motion for leave to proceed in forma pauperis.

Plaintiff alleges in his Complaint that in May 2011, he was implanted "by some government entity with what appeared to be an insect in [his] ear, but now [he] believes [it] is a 'DARPA' technologies device that makes Morris [sic] Code beeping sounds." (Doc. 1, at 2.) Plaintiff also alleges that he has been repeatedly falsely imprisoned by the State of Kansas "in all [his] criminal history." *Id*. Plaintiff alleges that the documents from his court file and transcript have been altered, fabricated, and seized. *Id*. Plaintiff alleges that during his false imprisonment, Aramark has denied him equal portions of food, has targeted his food with body fluids, and has written threats on his Styrofoam. *Id*. Plaintiff alleges that the Kansas Department of Corrections

1

("KDOC") has waged a campaign of harassment against him and has told inmates that he is "telling on everyone." *Id*.

As Count I, Plaintiff alleges that he is being falsely imprisoned by the KDOC regarding his Case No. 15CR528 in the District Court of Seward County, Kansas. *Id*. at 3. Plaintiff alleges that he was sentenced in September 2016, and the judges and lawyers involved denied him equal protection by using the testimony of a drunken person to imprison Plaintiff. *Id*. He claims that all the "sober parties" gave testimony that Plaintiff did not commit the crime. *Id*. Plaintiff alleges that his warrant was originally signed by a recused judge and then altered to remove that judge's name. Plaintiff claims that his records were withheld from him in his transfer from Lansing Correctional Facility ("LCF") to HCF. *Id*.

As Count II, Plaintiff alleges that in May 2011 while he was doing yardwork in Hutchinson, Kansas, a biological monitoring device—in the form of a flying insect—was implanted in his ear. *Id*. Plaintiff claims that the device was planted as a military plane flew overhead. *Id*. Plaintiff believes that the device "maps brainwaves & can decipher thoughts to be monitored by some government entity that has lended [sic] its support in this endeavor to experiment, detain, suppress, imprison, and ultimately exterminate [him]." *Id*. Plaintiff alleges that he has been examined by several doctors and Centurion staff, and was told that there is nothing in his ear and that the ringing is tinnitus. *Id*. Plaintiff states that after he came to the realization that he was actually hearing "Morris Code," he began to be targeted with a campaign of harassment by Seward County law enforcement and the recused judge. *Id*.

As Count III, Plaintiff alleges a "campaign of harassment, denial of safe and secure environment, equal portions of food and commissary privileges denied, KDOC staff telling gangs and inmates and Muslims [he] is telling on them all." *Id*. at 4. As support, Plaintiff alleges that

his food is delayed and is served in smaller portions than the 2800 calories per meal provided by Aramark. *Id*. at 4. Plaintiff alleges that he is denied commissary privileges that inmates in other facilities enjoy. *Id*. Plaintiff alleges that in December 2024, LCF started telling inmates that Plaintiff was telling on everybody. *Id*. Plaintiff alleges that he receives "verbal abuse," and his meals are targeted "with less food, and photographs of rats, penises, cutout tungues [sic]." *Id*.

As Count IV, Plaintiff alleges cruel and unusual punishment due to the denial of several dozen meals and/or "providing hazardous meals." *Id*. at 5. Plaintiff alleges that after January 2, 2025, he was denied special diet meals, provided hazardous meals, or meals were delayed. *Id*. Plaintiff alleges that his meals were targeted by Gange, Dollins, and others. *Id*. Plaintiff alleges that the targeting of his meals began at the El Dorado Correctional Facility ("EDCF"). *Id*.

As Count V, Plaintiff alleges LCF staff targeted and tampered with records, by altering the warrant in Plaintiff's criminal case and removing the recused judge's name. *Id*. Plaintiff alleges that the records were seized by LCF after he was transferred to HCF. Plaintiff alleges that his handwriting on the documents was removed and the ink is now lighter than it was originally. *Id*. Plaintiff alleges that this originally happened in November 2023. *Id*. Plaintiff alleges that "Lansing" then began telling inmates that Plaintiff was telling on everyone, that he has diseases, and "cutting [him] from the herd for assassination, faked suicide, since crisis stays at LCF are filed." *Id*.

As Count VI, Plaintiff alleges defamation of character, alleging that from December 2024 to May 22, 2025, LCF enacted a campaign of harassment by telling inmates that Plaintiff snitched on them and was diseased. *Id*. Plaintiff alleges that inmates began harassing him and targeting his food. *Id*. Plaintiff alleges that this forced him to seek crisis stays to eat food. *Id*. Plaintiff

3

alleges that the defamation followed him to HCF. *Id*. Plaintiff believes that an extermination order has officially been ordered on his life and the KDOC is carrying out the order. *Id*.

Plaintiff names as defendants: Aramark Food Services; Jeff Zmuda, KDOC Secretary of Corrections; Dan Schnurr, HCF Warden; Centurion; the State of Kansas; and the United States Government. For relief, Plaintiff seeks: immediate release from KDOC custody; immediate medical attention to remove the device and test for contagious diseases from contaminated food; a formal investigation into all money invested in his KBI number, FBI number, and open file investigations in the KDOC; and $2 million for false imprisonment, and $10 million for pain and suffering, cruel and unusual punishment, denying basic human needs, neglect, and tracking. *Id*. at 6.

## II. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988)(citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts

4

all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the pro se plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007)(citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at

5

1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. DISCUSSION

### A. Heck Bar and Habeas Nature of Claim

Plaintiff seeks release from prison and challenges his 2016 conviction and sentence. Plaintiff alleges in Count I that he is being falsely imprisoned by the KDOC regarding his 2016 conviction and sentence in his Seward County criminal case.

To the extent Plaintiff seeks release and challenges the validity of his sentence in his state criminal case, his federal claim must be presented in habeas corpus.[1] "[A] § 1983 action is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, *but not to the fact or length of his custody*." *Preiser v. Rodriguez,* 411 U.S. 475, 499 (1973) (emphasis added). When the legality of a confinement is challenged so that the remedy would be release or a speedier release, the case must be filed as a habeas corpus proceeding rather than under 42 U.S.C. § 1983, and the plaintiff must comply with the exhaustion of state court remedies requirement. *Heck v. Humphrey*, 512 U.S. 477, 482 (1994); *see also Montez v. McKinna,* 208 F.3d 862, 866 (10th Cir. 2000) (exhaustion of state court remedies is required by prisoner seeking habeas corpus relief); *see* 28 U.S.C. § 2254(b)(1)(A) (requiring exhaustion of available state court

---

[1] The Court notes that Plaintiff has also filed a § 2254 habeas petition in this Court. *See Jenkins v. Schnurr*, Case No. 25-3076-JWL, filed April 25, 2025 (D. Kan.).

6

remedies). "Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court. In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *see Woodford v. Ngo*, 548 U.S. 81, 92 (2006); *Rose v. Lundy*, 455 U.S. 509, 518–19 (1982);  Therefore, any claim challenging his state sentence is not cognizable in a § 1983 action.

Likewise, before Plaintiff may proceed in a federal civil action for monetary damages based upon an invalid conviction or sentence, he must show that his conviction or sentence has been overturned, reversed, or otherwise called into question. *Heck*, 512 U.S. 477.  If Plaintiff has been convicted and a judgment on Plaintiff's claim in this case would necessarily imply the invalidity of that conviction, the claim may be barred by *Heck*.  In *Heck v. Humphrey*, the United States Supreme Court held that when a state prisoner seeks damages in a § 1983 action, the district court must consider the following:

> whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Id*. at 487.  In *Heck*, the Supreme Court held that a § 1983 damages claim that necessarily implicates the validity of the plaintiff's conviction or sentence is not cognizable unless and until the conviction or sentence is overturned, either on appeal, in a collateral proceeding, or by executive order. *Id*. at 486–87.  Plaintiff has not alleged that the conviction or sentence has been invalidated.  Plaintiff should show good cause why his claims in Count I should not be dismissed as not properly brought in a § 1983 action.

### B.  Failure to State a Claim

Plaintiff has alleged various claims that fail to provide enough supporting facts to state a

plausible claim. Some of his claims relate to incidents or staff at LCF or EDCF.

Plaintiff's allegations in Counts III and IV relate to an alleged campaign of harassment, the denial of equal portions of food, the denial of commissary privileges, and an allegation that KDOC staff told inmates that Plaintiff was "telling on them." Plaintiff references LCF and EDCF in these claims, but he has not named staff from either facility as a defendant in this case, and he is no longer housed at either facility. He is currently housed at HCF. Plaintiff fails to provide any details or to name staff responsible for the alleged violations.

Plaintiff claims his meals were targeted by Gange, Collins, "and others," but he has not named Gange or Collins as a defendant and he has failed to name anyone at HCF that is responsible for allegedly tampering with his food or serving him insufficient portions. Plaintiff alleges that he received smaller portions of food, but fails to give any details as to who served him smaller portions or why he feels the portions were smaller than those received at other facilities. He also fails to allege what commissary privileges he was denied. Conclusory allegations without supporting factual averments are insufficient to state a claim for relief. *Hall*, 935 F.2d at 1110. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted).

Plaintiff claims that inmates were told that he was "telling on" people, but he fails to state who allegedly said something to other inmates, what they said, or to whom they said it. He suggests that this happened at LCF. He fails to allege that he was threatened by anyone or that he conveyed any threats to staff. Plaintiff alleges harassment without giving specific details as to who harassed him or how they harassed him. The Tenth Circuit has found that "[m]ere verbal threats or harassment do not rise to the level of a constitutional violation unless they create 'terror

8

of instant and unexpected death.'" *Alvarez v. Gonzales*, 155 F. App'x 393, 396 (10th Cir. 2005) (unpublished) (finding no constitutionally protected right where plaintiff claimed guard antagonized him with sexually inappropriate comment), *quoting Northington v. Jackson,* 973 F.2d 1518, 1524 (10th Cir. 1992). Where "the officers' comments, although inappropriate, do not suggest a show of deadly force," they fail "to create 'terror of instant and unexpected death.'" *Id.*; *see also McBride v. Deer*, 240 F.3d 1287, at 1291 n.3 (10th Cir. 2001) ("[A]cts or omissions resulting in an inmate being subjected to nothing more than threats and verbal taunts do not violate the Eighth Amendment.") (citation omitted).

In Count V Plaintiff alleges that his records were tampered with at LCF, and in Count VI he claims defamation against unidentified staff at LCF. He suggests that the harassment followed him to HCF. He provides no factual support for his claim that harassment followed him to HCF.

Some of Plaintiff's claims also appear to be frivolous. As Count II, Plaintiff alleges that in May 2011 a device in the form of an insect flew in his ear as a military plan passed overhead. He acknowledges that doctors have examined him and told him that the ringing in his ear is tinnitus. "A complaint . . . is frivolous when it 'lacks an arguable basis either in law or in fact.'" *Manco v. Does*, 363 F. App'x 572, 575 (10th Cir. 2010) (citing *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)). The Tenth Circuit in *Manco* held that:

> The district court also did not abuse its discretion when it held Manco's claims related to the alleged tracking device were frivolous. Manco's theory that numerous state officials monitor his thoughts and send him inaudible, profane messages is not supported by any evidence. Manco provides citations to various patents and secondary literature that describe tracking devices. Even if, for the sake of argument, this court assumes that such devices exist, Manco fails to provide evidence that officials implanted a device in his body, nor does he give a plausible motive for state officials to embark on such an endeavor. We agree with the district court that Manco's tracking device claims are frivolous. *See Denton v. Hernandez,* 504 U.S. 25, 33, 112 S.Ct. 1728, 118 L.Ed.2d 340

> (1992) (describing frivolous claims as "fanciful," "fantastic," and "delusional," and holding "a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them").

*Id*. Plaintiff should show good cause why his claims in Count II should not be dismissed as frivolous.

Not only is Plaintiff's claim frivolous, but any claim based on an incident in 2011 would be barred by the statute of limitations. The statute of limitations applicable to § 1983 actions is determined from looking at the appropriate state statute of limitations and tolling principles. *See Hardin v. Straub*, 490 U.S. 536, 539 (1989). "The forum state's statute of limitations for personal injury actions governs civil rights claims under both 42 U.S.C. § 1981 and § 1983. . . . In Kansas, that is the two-year statute of limitations in Kan. Stat. Ann. § 60–513(a)." *Brown v. Unified Sch. Dist. 501, Topeka Pub. Sch.*, 465 F.3d 1184, 1188 (10th Cir. 2006) (citations omitted).

### C. Improper Defendants

#### 1. No Personal Participation

Plaintiff names Jeff Zmuda, KDOC Secretary of Corrections ("SOC"), and Warden Dan Schnurr as defendants. Plaintiff has failed to allege how the Warden or SOC personally participated in the deprivation of his constitutional rights, and appears to rely on their supervisory status.

An essential element of a civil rights claim against an individual is that person's direct personal participation in the acts or inactions upon which the complaint is based. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985); *Henry v. Storey*, 658 F.3d 1235, 1241 (10th Cir. 2011) ("But § 1983 imposes liability for a defendant's own actions—personal participation in the specific constitutional violation complained of is essential.") (citing *Foote v. Spiegel*, 118 F.3d 1416, 1423–

10

24 (10th Cir. 1997) ("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation.") (citation omitted)); *Trujillo v. Williams*, 465 F.3d 1210, 1228 (10th Cir. 2006) ("In order for liability to arise under § 1983, a defendant's *direct personal responsibility* for the claimed deprivation . . . must be established.") (emphasis added) (citation omitted)). Conclusory allegations of involvement are not sufficient. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). As a result, a plaintiff is required to name each defendant not only in the caption of the complaint, but again in the body of the complaint and to include in the body a description of the acts taken by each defendant that violated plaintiff's federal constitutional rights.

Mere supervisory status is insufficient to create personal liability. *Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008) (supervisor status is not sufficient to create § 1983 liability). An official's liability may not be predicated solely upon a theory of respondeat superior. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Gagan v. Norton*, 35 F.3d 1473, 1476 FN4 (10th Cir. 1994), *cert. denied*, 513 U.S. 1183 (1995). A plaintiff alleging supervisory liability must show "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010), *cert. denied*, 563 U.S. 960 (2011). "[T]he factors necessary to establish a [supervisor's] § 1983 violation depend upon the constitutional provision at issue, including the state of mind required to establish a violation of that provision." *Id*. at 1204 (citing *Iqbal*, 129 S. Ct. at 1949). Plaintiff's claims against the Warden and SOC are subject to dismissal.

Plaintiff also references staff or the facilities. A reference to "staff" is insufficient. An assertion of collective responsibility fails to adequately allege a claim for relief against a specific defendant or to show personal responsibility by an individual defendant. *See Walker v. Mohiuddin*, 947 F.3d 1244, 1249–50 (10th Cir. 2020) (citing *Pahls v. Thomas*, 718 F.3d 1210, 1228 (10th Cir. 2013)). A plaintiff alleging civil rights violations must "isolate the allegedly unconstitutional acts of each defendant" such that his allegations "provide adequate notice as to the nature of the claims against each" defendant. *Robbins v. State of Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008). Allegations that a plaintiff's "rights 'were violated' or that 'defendants,' as a collective and undifferentiated whole, were responsible for those violations" are insufficient to support § 1983 claims. *Pahls*, 718 F.3d at 1228 (citations omitted).

### 2. Aramark and Centurion

Plaintiff names Aramark and Centurion as defendants, but fails to name any of their employees as defendants. Plaintiff also fails to allege a custom or policy of either defendant.

In the Tenth Circuit, "to hold a corporation liable under § 1983 for employee misconduct, a plaintiff must demonstrate the existence of the same sort of custom or policy that permits imposition of liability against municipalities under *Monell v. Department of Social Services*, 436 U.S. 658, 694 . . . (1978)." *Wishneski v. Andrade*, 572 F. App'x 563, 567 (10th Cir. 2014) (unpublished) (citations omitted). A corporation may not be held liable based upon respondeat superior because "vicarious liability is inapplicable to . . . § 1983 suits." *Rascón v. Douglas*, 718 F. App'x 587, 589–90 (10th Cir. 2017) (unpublished) (quoting *Iqbal*, 556 U.S. at 676); *see also Spurlock v. Townes*, 661 F. App'x 536, 545 (10th Cir. 2016) (unpublished); *Green v. Denning*, 465 F. App'x 804, 806 (10th Cir. 2012) (unpublished) ("An entity 'cannot be held liable *solely* because it employs a tortfeasor—or, in other words, [it] cannot be held liable under § 1983 on a respondeat

12

superior theory.'") (citation omitted); *Williams v. Correct Care Sols.*, No. 19-3075-SAC, 2019 WL 2005920, at *2 (D. Kan. May 7, 2019); *Jefferson v. Aramark Corr. Servs.*, Case No. 17-3161-SAC, 2017 WL 6557419, at *2 (D. Kan. Dec. 22, 2017); *Livingston v. Correct Care Sols.*, Case No. 07-3256-SAC, 2008 WL 1808340, at *1–2 (D. Kan. Apr. 17, 2008) (stating that "[a] policy is a formal statement by the private corporation" and "[a] custom is a persistent, well-settled practice of unconstitutional misconduct by employees that is known and approved by the corporation.").

This action is subject to dismissal as against Defendants Aramark and Centurion. Plaintiff must allege facts showing a policy or a custom that caused his injury. Plaintiff has failed to allege such facts. Therefore, Plaintiff is directed to show good cause why his claims against Defendants Aramark and Centurion should not be dismissed.

### 3. State of Kansas

The State of Kansas and its agencies are absolutely immune from suits for money damages under the Eleventh Amendment. The Eleventh Amendment presents a jurisdictional bar to suits against a state and "arms of the state" unless the state waives its immunity. *Peterson v. Martinez*, 707 F.3d 1197, 1205 (10th Cir. 2013) (quoting *Wagoner Cnty. Rural Water Dist. No. 2 v. Grand River Dam Auth.*, 577 F.3d 1255, 1258 (10th Cir. 2009)). Therefore, in the absence of some consent, a suit in which an agent or department of the state is named as a defendant is "proscribed by the Eleventh Amendment." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). It is well established that Congress did not abrogate the states' sovereign immunity when it enacted § 1983. *Quern v. Jordan*, 440 U.S. 332, 338–45 (1979); *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002). Because Plaintiff has neither made a specific claim against the State of Kansas nor shown any waiver of immunity from suit, he must show good cause why this defendant should not be dismissed from this action.

### 4. The United States Government

Plaintiff has failed to allege that the United States Government was involved in any of his claims. He brings this case under 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Plaintiff's claims involve his state criminal case and conviction, and his incarceration at state prisons. Nothing in Plaintiff's Complaint suggests that the United States Government was involved in his claims. Plaintiff's claims against the United States Government are subject to dismissal.

### D. Request for Relief

Plaintiff's request for compensatory damages is barred by 42 U.S.C. § 1997e(e), because Plaintiff has failed to allege a physical injury. Section 1997e(e) provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)." 42 U.S.C. § 1997e(e).

Plaintiff also asks the Court to order an investigation. The Court is without authority to grant such relief. *See Nicholas v. Hunter*, 228 F. App'x 139, 141 (3rd Cir. 2007) ("The remaining relief requested is not available as the District Court lacks authority to order a federal investigation and prosecution of the defendants or the termination of their employment."); *Martin v. LeBlanc*, No. 14-2743, 2014 WL 6674289, at n.1 (W.D. La. Nov. 24, 2014) (finding that where plaintiff requested an investigation, the termination of the defendants' employment and the closure of the prison, "[s]uch relief is not available in this action").

### IV. Motion for Preliminary Injunction

Plaintiff has filed a Motion to Request Injunction Order (Doc. 4), asking the Court to order the KDOC and HCF to produce his trust account statement to support his motion for leave to proceed in forma pauperis. The Court issued a Notice of Deficiency (Doc. 3) requiring Plaintiff to submit his motion for leave to proceed in forma pauperis on the Court-approved form, and to include a certified copy of his trust fund account statement. Because the Court is granting Plaintiff's motion for leave to proceed in forma pauperis, he no longer needs an order requiring the facility to provide his trust account statement.

Plaintiff also asks for the Court to allow the use of a camera to document the food portions served at HCF. Plaintiff's Complaint has not survived screening and is subject to dismissal. Any request for the Court to order the placement of a camera at HCF is denied. Therefore, Plaintiff's motion requesting an injunction is denied.

### V. Response Required

Plaintiff is required to show good cause why his Complaint should not be dismissed for the reasons stated herein. Failure to respond by the deadline may result in dismissal of this action without further notice.

**IT IS THEREFORE ORDERED THAT** Plaintiff's Motion for Leave to Proceed In Forma Pauperis (Doc. 2) is **granted.** Notwithstanding this grant of leave, Plaintiff is required to pay the full amount of the filing fee and is hereby assessed $350.00. Plaintiff is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of Plaintiff shall forward payments from the prisoner's account to the Clerk of the Court each time the amount in the account exceeds $10.00 until the filing fees are paid. 28 U.S.C. § 1915(b)(2). The Clerk is to transmit a copy of this order to

Plaintiff, to the finance office at the institution where Plaintiff is currently confined, and to the Court's finance office.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Request Injunction Order (Doc. 4) is **denied.**

**IT IS FURTHER ORDERED** that Plaintiff is granted until **August 15, 2025,** in which to show good cause, in writing to the undersigned, why Plaintiff's Complaint should not be dismissed for the reasons stated herein.

**IT IS SO ORDERED**.

**Dated July 16, 2025, in Kansas City, Kansas.**

<u>S/ John W. Lungstrum</u>
JOHN W. LUNGSTRUM
UNITED STATES DISTRICT JUDGE